**McGuireWoods LLP**
Matthew C. Kane (SBN 171829)
 Email: mkane@mcguirewoods.com
Michael D. Mandel (SBN 216934)
 Email: mmandel@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Tel: (310) 315-8200
Fax: (310) 315-8210

Sylvia J. Kim (SBN 258363)
 Email: skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Tel: (415) 844-9944
Fax: (415) 844-9922

Attorneys for Defendant
BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINDY R. CASTILLO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA NATIONAL ASSOCIATION, a North Carolina Corporation, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 8:17-cv-00580-DOC (KESx)<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT:**<br><br>**(1) NOTICE OF MOTION**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed Under Separate Covers:*<br><br>**(3) STATEMENT OF UNCONTROVERTED FACTS**<br><br>**(4) INDEX OF EVIDENCE**<br><br>**(5) DECLARATION OF PAMELA HANNAH [DKT. #88-2]**<br><br>**(6) DECLARATION OF MATTHEW C. KANE**<br><br>**(7) DECLARATION OF WILFREDO PAGUIO**<br><br>**(8) DECLARATION OF ROBERT M. DROZYNSKI**<br><br>**(9) [PROPOSED] ORDER**<br><br>**(10) [PROPOSED] JUDGMENT**<br><br>**Date: November 4, 2019**<br>**Time: 8:30 a.m.**<br>**Crtrm.: 9D**<br>**Judge: Hon. David O. Carter** |

# **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................ iii

NOTICE OF MOTION ..................................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I.      INTRODUCTION ...........................................................................1

II.     STATEMENT OF FACTS ..................................................................2

    A.      PLAINTIFF'S EMPLOYMENT WITH THE BANK............................. 2

    B.      THE BANK'S TIMEKEEPING REQUIREMENTS ............................. 3

        1.      The Bank Required Plaintiff To Accurately Record All Of
            Her Working Time............................................................ 3

        2.      Pursuant To Her Training, Plaintiff Understood That She
            Was Required To Record All Time Worked, Including
            Preliminary And End Of Shift Tasks................................... 3

    C.      THE BANK'S MEAL BREAK POLICY.......................................... 5

        1.      The Bank Maintained A Legally Compliant Meal Period
            Policy ............................................................................. 5

        2.      The Bank Provided Plaintiff With Compliant Meal Periods
            Pursuant To Its Policy....................................................... 5

        3.      To The Extent Plaintiff Now Contends She Was Prevented
            From Taking Compliant Meal Breaks, The Bank Was
            Never Made Aware Of Any Alleged Violations ....................... 6

    D.      THE BANK'S REST BREAK POLICY .......................................... 6

        1.      The Bank's Legally Compliant Rest Period Policy.................... 6

        2.      The Bank Authorized And Permitted Plaintiff To Take Rest
            Periods Pursuant To Its Policy........................................... 7

    E.      THE BANK'S PAYMENTS TO PLAINTIFF PURSUANT TO ITS
        INCENTIVE PLAN ................................................................. 7

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT**

F. PLAINTIFF'S WAGE STATEMENTS......................................................... 9

G. THE BANK'S OVERPAYMENT TO PLAINTIFF OF PTO BEFORE HER
TERMINATION ......................................................................................... 9

III. LEGAL ARGUMENT ......................................................................................9

A. LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT
MOTIONS.................................................................................................. 9

B. PLAINTIFF'S FIRST, SECOND, AND EIGHTH CAUSES OF ACTION FOR
UNPAID WAGES FAIL AS A MATTER OF LAW ...................................... 10

1. Plaintiff's Unpaid Minimum Wage And Overtime Causes
Of Action Fail Under California Law And The FLSA
Because The Bank Had No Knowledge Of Any Off-The-
Clock Work Performed.................................................... 10

2. Plaintiff's Overtime Causes Of Action Fail Under
California Law And The FLSA Because Any Alleged
Underpayments Were Completely Setoff By PTO
Overpayments To Her..................................................... 14

C. PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION FOR MEAL
AND REST BREAK VIOLATIONS FAIL AS A MATTER OF LAW............... 17

1. Plaintiff's Meal Break Cause Of Action Fails............................. 17

2. Plaintiff's Rest Break Cause Of Action Fails............................. 20

D. PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION FOR
FAILURE TO PAY ALL TIMELY WAGES, FAILURE TO PROVIDE
ACCURATE WAGE STATEMENTS, AND UCL VIOLATIONS FAIL AS A
MATTER OF LAW .................................................................................. 21

1. The Waiting Time Penalties Cause Of Action Cannot Be
Maintained As A Matter Of Law................................... 22

2. Plaintiff's Wage Statement Cause Of Action Cannot Be
Maintained As A Matter Of Law................................... 22

3. Plaintiff's UCL Cause Of Action Fails ...................................... 23

IV. CONCLUSION.................................................................................................24

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

5

*Angeles v. U.S. Airways, Inc.*,
   2013 WL 622032 (N.D. Cal. Feb. 19, 2013).......................................22

6

7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..............................................................10

8

9

*Cleveland v. Groceryworks.com, LLC*,
   200 F. Supp. 3d 924 (N.D. Cal. 2016)....................................11, 12, 13

10

11

*Corona v. Time Warner Cable, Inc.*,
   2014 WL 11456535 (C.D. Cal. Oct. 16, 2014) .................................18

12

13

*Enodis Corp. v. Employers Ins. Co. of Wausau*,
   2004 WL 5642006 (C.D. Cal. May 18, 2004)....................................15

14

15

*Forrester v. Roth's I. G. A. Foodliner, Inc.*,
   475 F. Supp. 630 (D. Or. 1979)...........................................11, 14

16

*Gonsalves v. Conseco Ins. Co.*,
   2006 WL 3486962 (E.D. Cal. Dec. 1, 2006)....................................15

17

18

*Manigo v. Time Warner Cable, Inc.*,
   2017 WL 5054368 (C.D. Cal. Oct. 17, 2017) ..........................18, 19, 20, 21

19

20

*Plaisted v. Dress Barn, Inc.*,
   2013 WL 300913 (C.D. Cal. Jan. 25, 2013)....................................19

21

22

*Porch v. Masterfoods, USA, Inc.*,
   685 F. Supp. 2d 1058 (C.D. Cal. 2008),
   *aff'd*, 364 F. App'x 365 (9th Cir. 2010) ....................10, 11, 13, 20, 21

23

24

*Porteous v. Capital One Servs. II, LLC*,
   2018 WL 3469016 (D. Nev. July 17, 2018)....................................14

25

26

*Radobenko v. Automated Equip. Corp.*,
   520 F.2d 543-44 (9th Cir. 1975).............................................10

27

28

*Schultz v. Wal-Mart Stores, Inc.*,
   68 F. App'x 130 (9th Cir. 2003)............................................17

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

*Sprint Commc'ns Corp. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) ........................................................................... 17

*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080 (N.D. Cal. 2007) ................................. 10, 18, 21

**State Cases**

*Alvarado v. Dart Container Corp. of California*,
    4 Cal. 5th 542 (2018), *as modified* (Apr. 25, 2018) ......................... 16

*Brinker Rest. Corp. v. Superior Court*,
    53 Cal. 4th 1004 (2012) .............................................................. 11, 18, 20

*Constr. Protective Servs. v. TIG Specialty Ins. Co.*,
    29 Cal. 4th 189 (2002) ...................................................................... 15

*Jess v. Herrmann*,
    26 Cal. 3d 131 (1979) ....................................................................... 15

*Jong v. Kaiser Found. Health Plan, Inc.*,
    226 Cal. App. 4th 391 (2014) ..................................................... 12, 14

*Kalinowski v. Bd. of Educ.*,
    90 Cal. App. 3d 245 (1979) ............................................................... 16

*Korea Supply v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................... 23

*Maldonado v. Epsilon Plastics, Inc.*,
    22 Cal. App. 5th 1308 (2018) ..................................................... 22, 23

*McDaniel v. City & Cty. of San Francisco*,
    259 Cal. App. 2d 356 (1968) ............................................................. 16

*Naranjo v. Spectrum Sec. Servs., Inc.*,
    2019 WL 4686516 (Cal. Ct. App. Sept. 26, 2019) ...................... 21, 22

*Patterson v. Henderson Tire & Rubber Co.*,
    112 Cal. App. 48 (1931) .................................................................... 16

*Prachasaisoradej v. Ralphs Grocery Co., Inc.*,
    42 Cal. 4th 217 (2007) ...................................................................... 23

*Safine v. Sinnott*,
    15 Cal. App. 4th 614 (1993) ........................................................ 15, 17

*Serrano v. Aerotek, Inc.*,
    21 Cal. App. 5th 773 (2018) ............................................................... 21

**Federal Statutes**

29 U.S.C. § 201 *et seq.* ........................................................................ 23

29 U.S.C. § 203(e)(1) ............................................................................ xi

**State Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................ xi, 2

Cal. Civ. Proc. Code § 431.70 ......................................................... 15, 17

Cal. Code Regs. § 11070, subd. 12 ....................................................... 20

Cal. Lab. Code § 200 ............................................................................. ix

Cal. Lab. Code §§ 201-203 ..................................................................... x

Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1, and 1198 .......... ix

Cal. Lab. Code § 226 ........................................................... x, 2, 22, 23

Cal. Lab. Code § 226(a) ........................................................... x, 9, 22

Cal. Lab. Code § 226(e) ................................................................ x, 22

Cal. Lab. Code § 226(e)(1) .................................................................. 22

Cal. Lab. Code § 226(e)(2)(B) .............................................................. 22

Cal. Lab. Code §§ 226.7, 512 and 1198 ................................................. x

Cal. Labor Code § 203 ............................................................... x, 2, 21

Cal. Labor Code §§ 226.7 and 512 ........................................................ x

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................ xi, 2

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**Federal Rules**

Fed. R. Civ. P. 56..................................................................................................ix

Fed. R. Civ. P. 56(c) ...........................................................................................9

**Local Rules**

L.R. 7-3 ................................................................................................................xi

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## NOTICE OF MOTION

**TO THE HONORABLE DAVID O. CARTER AND TO PLAINTIFF CINDY CASTILLO AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 4, 2019, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of the above-entitled Court, located at 350 W. First Street, Los Angeles, CA 90012, Defendant Bank of America, N.A. ("Defendant" or the "Bank") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 56, for an Order granting summary judgment or, alternatively, partial summary judgment (the "Motion") against Plaintiff Cindy Castillo ("Plaintiff") on all of the following claims and causes of action alleged in her Fifth Amended Complaint ("5AC"), on the following grounds:

Plaintiff's **First Cause of Action** for failure to pay **minimum wages** in violation of Cal. Labor Code §§ 200, 1194, 1194.2, and 1197 fails because the Bank maintained compliant timekeeping policies, trained Plaintiff to accurately record all time worked, and properly paid her pursuant to her time records, which the Bank reasonably believed were accurate.

Plaintiff's **Second Cause of Action** for failure to properly calculate and pay **overtime wages** at the proper rate in violation of Cal. Labor Code §§ 204.3, 510, 1194 fails because the Bank maintained compliant timekeeping policies, trained her to record all time worked, and properly paid her pursuant to her time records, which the Bank reasonably believed were accurate. Further, to the extent that the claim is predicated on a purported failure to pay Plaintiff for overtime hours worked in the calendar months in which she earned bonuses, even assuming *arguendo* that the Bank had calculated her overtime pay in the way she alleges in this case, it fails as a matter of law because any and all errors in calculating such wages that may have been to Plaintiff's financial detriment were and are ***completely setoff*** by the Bank's overpayment of paid time off ("PTO") to Plaintiff after her termination, resulting in there being no basis for such overtime liability by the Bank to Plaintiff.

Plaintiff's **Third Cause of Action** for failure to provide **meal breaks** in violation of Cal. Labor Code §§ 226.7 and 512 fails because at all relevant times Defendant maintained lawful policies that provide for duty-free, 30-minute meal breaks in accordance with applicable law, and Defendant complied with such legally-compliant policies.

Plaintiff's **Fourth Cause of Action** for failure to provide **rest breaks** in violation of Cal. Labor Code §§ 226.7 fails because at all relevant times, Defendant maintained lawful policies that provide for duty-free, 10-minute rest breaks in accordance with applicable law, and Defendant complied with such legally-compliant policies.

Plaintiff's **Fifth Cause of Action** for failure to timely pay all **final wages** in violation of Cal. Labor Code §§ 201-203 fails as a matter of law because it is derivative of Plaintiff's legally deficient claims for failure to pay minimum and overtime wages and for meal and rest break violations. Further, meal and rest break violations do not give rise to penalties under Cal. Labor Code § 203 as a matter of law.

Plaintiff's **Sixth Cause of Action** for failure to provide accurate itemized **wage statements** in violation of Cal. Labor Code §§ 204, 226(a), 1174, and 1175 fails as a matter of law because it is derivative of her deficient claims for minimum and overtime wages and meal and rest breaks. Further, alleged meal and rest break violations do not give rise to liability under Cal. Labor Code § 226 as a matter of law. In addition, Plaintiff is not entitled to recover any damages or penalties under Cal. Labor Code § 226(e) given that she cannot establish that her wage statements were inaccurate as to the wages that were *actually paid* to her in each corresponding pay period and, thus, cannot establish that she suffered the requisite cognizable injury to recover penalties. Further, Plaintiff cannot prove that the Bank engaged in a knowing and intentional failure to provide accurate itemized wage statements.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Plaintiff's **Seventh Cause of Action** for **unfair competition** under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), fails as a matter of law because it is predicated on her legally deficient claims for meal and rest break payments and unpaid minimum and overtime wages.

Plaintiff's **Eighth Cause of Action** for failure to properly calculate and pay **overtime wages** at the proper rate in violation of 29 U.S.C. § § 203(e)(1), 206, 207, and 216 of the Fair Labor Standards Act fails because, as stated above, the Bank maintained legal timekeeping policies, trained Plaintiff to accurately record her time, and properly paid her pursuant to her time records, which the Bank reasonably believed were accurate.  Further, to the extent that the claim is predicated on a purported failure to properly pay Plaintiff for overtime hours worked in the calendar months in which she earned bonuses, even assuming *arguendo* that the Bank had calculated her overtime pay in the way she alleges in this case, it fails as a matter of law because any and all errors in calculating such wages that may be been to Plaintiff's financial detriment were and are **_completely setoff_** by the Bank's overpayment of PTO to Plaintiff after her termination, resulting in there being no basis for such overtime liability by the Bank to Plaintiff.

This Motion is based upon this Notice, the Memorandum of Points and Authorities, the concurrently-filed Statement of Uncontroverted Facts, Declarations of Matthew C. Kane, Robert Drozynski, and Wilfredo Paguio, Declaration of Pamela Hannah [Dkt. #88-2] previously filed in support of Defendant's Opposition to Plaintiff's Motion for Class Certification, any accompanying exhibits, proposed Order and proposed Judgment, as well as all other documents, records and files in this action, and upon such further written and oral evidence and arguments as may be presented in support of this Motion at or before the time of the hearing.

On September 23, 2019, Defendant initiated the meet and confer process with Plaintiff regarding the grounds for this Motion in accordance with the requirements of Local Rule 7-3.  However, the parties were unable to resolve the disputes

x

underlying this Motion, thus necessitating the filing of this Motion.

DATED: October 7, 2019          McGuireWoods LLP


                                By: /s/ Matthew C. Kane
                                    Matthew C. Kane
                                    Michael D. Mandel
                                    Sylvia J. Kim
                                Attorneys for Defendant
                                BANK OF AMERICA, N.A.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Cindy Castillo ("Plaintiff") is a former employee of Defendant Bank of America, N.A. ("Defendant" or the "Bank").  She alleges in her Fifth Amended Complaint ("5AC") that she worked off-the-clock without being paid minimum or overtime wages in violation of state and federal law.  Further, Plaintiff asserts that the Bank failed to properly calculate and pay her for all of her earned overtime wages as required under California and the Fair Labor Standards Act ("FLSA") in connection with the bonus payments she received.  She also alleges that Defendant failed to provide her with legally-compliant second meal breaks[1] and that Defendant failed to authorize and permit her to take rest breaks.  Finally, she alleges derivative claims for inaccurate wage statements, failure to timely pay wages, and unfair competition.  However, all of Plaintiff's claims fail as a matter of law:

First, as for the alleged failure to pay **minimum and overtime wages** under, Plaintiff's claims fail because the Bank maintained lawful timekeeping policies, trained her to accurately record her time, had **no actual or constructive knowledge** that she was not accurately recording her time, and therefore it properly relied on her submitted timekeeping records to pay her wages.  Further, as to Plaintiff's allegation that the Bank improperly calculated her overtime pay based on bonus payments she received, even assuming *arguendo* that any such improper calculation occurred, any and all damages Plaintiff may claim are **entirely setoff** by the Bank's overpayment of paid time off ("PTO") to Plaintiff in connection with her termination.  Thus, at a minimum, this portion of Plaintiff's overtime claim is barred as a matter of law.

---

[1] In her Third Cause of Action, Plaintiff only alleges that the Bank failed to provide her with *second* meal breaks.  For purposes of this Motion, Defendant protectively moves for summary judgment as to any and all meal break violations that Plaintiff may claim, without waiver or limitation of its position that the only meal break claim properly at issue in this action is for *second* meal break violations.

<u>Second</u>, Plaintiff's ***meal and rest break*** claims fail because at all relevant times, Defendant maintained compliant policies that provided for the requisite duty-free, 30-minute meal breaks and 10-minute rest breaks in accordance with applicable law, Plaintiff received training to comply with those policies, and Plaintiff cannot satisfy her burden to establish that Defendant otherwise forced her to forego such breaks in contravention of those legally-compliant policies.  Further, based on Plaintiff's time records, the Bank had ***no actual or constructive knowledge*** that Plaintiff was prevented from taking meal breaks.

<u>Third</u>, Plaintiff's ***wage statement*** claim fails because she cannot establish that her wage statements were inaccurate as to the wages that were ***actually paid*** to her in each corresponding pay period and, thus, cannot establish that she suffered the requisite cognizable injury to recover penalties.  Further, the Bank did not knowingly or inadvertently fail to provide accurate itemized wage statements.  In any event, this claim cannot be maintained because it is derivative of Plaintiff's other claims, which fail as a matter of law, and, at least as to the alleged meal and rest break violations, no liability exists under Labor Code § 226 as a matter of law.

<u>Fourth</u>, Plaintiff's claim for ***waiting time penalties*** fails because it is derivative of her claims other claims, which fail as a matter of law, and, at least as to break violations, no liability exists under Labor Code § 203 as a matter of law.

<u>Fifth</u>, Plaintiff's claim for ***unfair competition*** under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), fails as a matter of law because it is predicated on her claims for meal and rest break payments and for unpaid wages with fail as a matter of law in the first instance.

Accordingly, as discussed more fully below, summary judgment should be granted in favor of the Bank on ***all*** of Plaintiff's claims for relief.

## II.    STATEMENT OF FACTS

### A.    PLAINTIFF'S EMPLOYMENT WITH THE BANK

Plaintiff worked for the Bank as a full-time, non-exempt employee from

approximately February 1992 until her termination on September 12, 2016. Uncontroverted Material Fact ("UMF") 1.  At all times relevant, Plaintiff worked as a Senior Collector on the Auto Recovery Team in the Collections and Recovery division at the Bank's Brea, California call center.  UMF 2.  Plaintiff's job involved collecting charged-off auto loans.  UMF 3.

### B.   THE BANK'S TIMEKEEPING REQUIREMENTS

#### 1.   The Bank Required Plaintiff To Accurately Record All Of Her Working Time

Under the Bank's policies, all non-exempt employees, including Plaintiff, are responsible for recording their own work time in the Bank's electronic timekeeping system, including shift start and end times, and the start and end of meal breaks. UMF 5, 6.  They are required to record these times accurately, to-the-minute, even when they differ from their scheduled times, because the Bank relies upon this information to pay them for all of their time worked, even time that was not preauthorized.  UMF 7, 8.  Time records also may be modified by employees before they are submitted to ensure that they accurately capture all time worked.  UMF 9.

Plaintiff admits that the Bank's policy required employees to "enter all time to the minute, including start and end times, meal periods and any time off."  UMF 10. Although managers are expected to ensure that employees accurately record their time, it is ultimately the employees' duty to do so.  UMF 11, 12.  Employees are reminded about their obligation to comply with this policy in various ways depending on their manager, including orally and in writing.  UMF 13.  Plaintiff never informed her supervisor that she was not accurately recording her time.  UMF 14.

#### 2.   Pursuant To Her Training, Plaintiff Understood That She Was Required To Record All Time Worked, Including Preliminary And End Of Shift Tasks

The Bank provides regular training on its timekeeping policies to its hourly employees and their respective managers.  UMF 15.  Such training emphasizes the

3

Bank's policies that employees are responsible for reporting all time worked to the minute each day.  UMF 16.

The Bank's mandatory timekeeping training also states that any "preliminary" and end of shift tasks, such as booting up and down a computer and logging into and out of systems, are considered *work time that must be recorded*.  UMF 17.  It trains that the "Start Time" and "End Time" should include ***preparatory tasks*** (***initial log-in procedures***, team meetings, required reading materials, follow-up calls ***and equipment preparation***)" and log out and other work procedures.  UMF 18. Consistent with this policy, employees are not supposed to arrive at their work station or begin performing preliminary tasks until their scheduled start time.  UMF 19.

Plaintiff admits that she took this training.  UMF 20.  As a result, she knew and understood the Bank's timekeeping policy required her to accurately record all of her work time, including her time spent on log-in and out procedures and equipment preparation.  UMF 21, 22.  Further, Plaintiff admits that no one told her to deviate from that policy.  UMF 23.  She admits that she was told to record the time spent logging out at the end of the day.  UMF 24.  She testified that, with the exception of her shift start time, she correctly and accurately recorded her time. UMF 25.  However, she also testified that she could not recall a specific occasion on which she actually worked <u>before</u> her recorded start time.  UMF 26.  Plaintiff's requests to modify her timesheets to accurately record her time worked were always granted.  UMF 27.

It is undisputed that Plaintiff's supervisor understood and expected that Plaintiff accurately record all of her time worked in the Bank's timekeeping system pursuant to the Bank's policies.  UMF 28.  In fact, it is his practice to remind his subordinates to comply with the Bank's timekeeping policy when recording their time.  UMF 29.  He never told Plaintiff not to record all of her work time, including any pre- or post-shift activities she performed.  UMF 30.  Further, Plaintiff never

notified him that she was not accurately recording her work time and he was never made aware from any source that her time records were not entirely accurate.  UMF 31, 32.

### C.     THE BANK'S MEAL BREAK POLICY

#### 1.     The Bank Maintained A Legally Compliant Meal Period Policy

During the relevant time, the Bank's meal break policy has been:

California employees who work more than 5 hours are entitled to one meal period of at least 30 minutes.  It should start no later than the beginning of the 5th hour of work.  California employees are not entitled to a second meal period unless they have worked over 10 hours in that day.

***

Meal periods may be waived if the employee works no more than 6 hours in a work day . . .  Associates who work more than 10 hours but less than 12 hours in a work day may voluntarily waive their second meal period if the employee received his/her first meal period (as required) as long as he/she does not work more than 12 hours that day.

***

Associates who work more than 10 hours but less than 12 hours in a work day may voluntarily waive their second meal period if the employee received his/her first meal period (as required) as long as he/she does not work more than 12 hours that day.  If the meal period is waived, the employee must be paid for the time worked.  Once 12 hours is exceeded, neither . . . meal period can be waived.

UMF 33-35.

#### 2.     The Bank Provided Plaintiff With Compliant Meal Periods Pursuant To Its Policy

The Bank provides annual training on its meal break policies and procedures, and Plaintiff completed that training numerous times.  UMF 36, 37.  As a result, Plaintiff was permitted to take a 30-minute meal break no later than the end of her fifth hour of work.  UMF 38.  She had a set meal break scheduled every day to make sure she timely took her breaks.  UMF 39.  Indeed, Plaintiff and members of her team typically were scheduled to take their meal breaks four hours and forty-five minutes into their shifts.  UMF 40.  While deviations to the schedule may occur, employees are still expected to take timely meal breaks consistent with the Bank's

5

meal break policy.  UMF 41.

Plaintiff's direct supervisor enforced the Bank's meal period policy.  UMF 42. It was his expectation and understanding that Plaintiff was taking her scheduled 30-minute meal breaks in accordance with the Bank's policies.  UMF 43.  He also expected her to accurately record the start and end times of each meal break.  UMF 44.  Further, Plaintiff never complained to him that she was unable to take any of her meal periods or that any of her meal breaks were interrupted or late, and she never informed him that her recorded meal periods were not accurate.  UMF 45, 46.

### 3. To The Extent Plaintiff Now Contends She Was Prevented From Taking Compliant Meal Breaks, The Bank Was Never Made Aware Of Any Alleged Violations

Plaintiff testified in this case that <u>sometimes</u> she started her meal breaks later than her scheduled break time due to a telephone call that ran long and after she had worked more than five hours.  UMF 47.  But she admits that, in direct violation of the Bank's timekeeping policies, *she falsely recorded* her <u>scheduled</u> break time instead of her actual break time, even though no one told her to do so.  UMF 48, 49. She also admits that she always accurately recorded the time she returned from a meal break and no one told her to cut her meal break short if her break started later than scheduled.  UMF 50, 51.  Plaintiff also knew the Bank's policy was to provide a second meal period after 10 hours of work.  UMF 52.  Plaintiff admits that she never complained about not being provided any meal breaks.  UMF 53.

### D. THE BANK'S REST BREAK POLICY

### 1. The Bank's Legally Compliant Rest Period Policy

During the relevant time, the Bank's rest break policy has been:

A 10-minute rest period is required per 4 hours worked or major fraction thereof (a major fraction of 4 hours is defined as 50% or 2 hours or more).  To the extent practicable, it should be taken in the middle of the work schedule.  A rest period is not required for less than 3.5 hours of total daily work time.

\*\*\*

A second rest period of 10 minutes is required if total daily work time is 6 hours or more.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

\*\*\*

A third rest period of 10 minutes is required if total daily work time is 10 hours or more.

\*\*\*

Rest periods should be scheduled so they do not immediately precede or follow any meal periods.

UMF 54-57.

### 2. The Bank Authorized And Permitted Plaintiff To Take Rest Periods Pursuant To Its Policy

Plaintiff completed the Bank's annual training on its rest break policies and procedures numerous times. UMF 58. Plaintiff was scheduled and permitted to take rest breaks of 15 minutes each (rather than just the legally-required 10 minutes) every day and was paid for that time. UMF 59, 60. Her rest breaks were supposed to be taken at the same times every day. UMF 61. She admits to taking her rest breaks as scheduled "[f]or the most part," and concedes that it was rare that she did not take a rest break. UMF 62, 63. Even assuming *arguendo* that Plaintiff did not take certain rest breaks, there is no evidence that the Bank ever prevented her from taking any rest break or that it was ever made aware that she was prevented from taking any rest break. Plaintiff also admits that no manager or supervisor forced here to forego her rest breaks. UMF 64. Further, Plaintiff admits that she never complained about not being provided any rest breaks. UMF 65. Her supervisor's expectation and understanding was that Plaintiff was taking her rest breaks as authorized and permitted by the Bank, and he had no knowledge that she was not taking her breaks or that they were interrupted, cut short, or missed for any reason. UMF 66, 67.

### E. THE BANK'S PAYMENTS TO PLAINTIFF PURSUANT TO ITS INCENTIVE PLAN

As a Senior Collector, Plaintiff was eligible to participate in the Bank's Consumer Operations Incentive Plan (the "Plan") which rewards employees for their work performance. UMF 68. Pursuant to the Plan, Plaintiff was eligible to receive a

7

monthly Consumer Vehicle Lending ("CVL") incentive payment (the "incentive payment" or "bonus") based on her work performance.  UMF 69.  The monthly CVL incentive payment under the Plan is paid out approximately 30 days following the end of the calendar month in which it is earned.[2]  UMF 70.  The Plan "is designed to reward employees for those behaviors that lead to quality results and balanced performance."  UMF 72.  The bonus is designed to be an incentive for increased production for each hour of work performed by an employee.  UMF 73.  Employees earn incentive points if they meet certain job performance metrics.  UMF 74. Employees are "rank ordered by their incentive points" on an "incentive scoreboard" and are compared to their peers to determine their earned awards.  UMF 75.

Plaintiff received some of these monthly incentive payments.  UMF 76.  She claims that the payment of these bonuses resulted in an underpayment of wages for overtime worked during the months in which she earned the bonuses because:  (1) the Bank improperly used her <u>total</u> hours worked (as opposed to only <u>non-overtime</u> hours worked) in its calculation of her regular rate and (2) the Bank improperly used the total hours worked for those pay periods that <u>ended</u> in a given month in which the bonus was earned in its calculation (as opposed to the total hours <u>worked</u> in the calendar month in which the bonus was earned).

From March 31, 2013, through Plaintiff's termination on September 12, 2016, there were only <u>4 months</u> during which Plaintiff worked overtime *and* earned a bonus.[3]  UMF 77.  However, even assuming *arguendo* that the Bank calculated her overtime based on the bonuses she received in the manner she alleges in this case, the most additional overtime she would be owed is $662.22.  UMF 79.  However, as

---

[2] Plaintiff was also eligible for a <u>discretionary</u>, *annual* CVL payment, which was paid approximately 45 days following the end of the calendar year.  UMF 78.

[3] Plaintiff never worked double time hours in any month in which an incentive payment was earned.

shown below, that amount is ***entirely offset*** by the Bank's $914.79 overpayment of PTO to her.

### F.   PLAINTIFF'S WAGE STATEMENTS

During Plaintiff's employment with the Bank, she was paid on a biweekly basis.  UMF 80.  The Bank issued to her electronic wage statements for each pay period.  UMF 81.  The wage statements were generated based on the working hours Plaintiff recorded in the timekeeping system.  UMF 82.  Plaintiff does not dispute that her wage statements accurately reflected all of the hours that she recorded in the timekeeping system for the corresponding pay period.  UMF 83.  She admits that she never recalled seeing a wage statement that she thought was inaccurate.  UMF 84.

### G.   THE BANK'S OVERPAYMENT TO PLAINTIFF OF PTO BEFORE HER TERMINATION

On September 12, 2016, the Bank terminated Plaintiff's employment for manipulating the incentive scoreboard and falsifying account information by documenting calls that she never made.  UMF 85.  She received her final pay on September 19, 2016 via direct deposit.  UMF 86.

After Plaintiff's termination, the Bank determined that it had overpaid Plaintiff the gross amount of **$914.79** in PTO (for vacation and occasional illness) for 2016.  UMF 87.  The Bank sent Plaintiff two letters in December 2016 to recoup this overpayment.  UMF 88.  Plaintiff testified that she received at least one of those letters.  UMF 89.  She also admitted that she never repaid the Bank.  UMF 90.

## III.   LEGAL ARGUMENT

### A.   LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT MOTIONS

Summary judgment is appropriate if the pleadings and affidavits show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To defeat summary judgment, the nonmoving party must produce "significant probative evidence" outside the pleadings which would convince a rational trier of fact that a genuine issue of

material fact exists.  *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1082 (N.D. Cal. 2007).   The mere existence of a factual dispute will not automatically necessitate denial of the motion; rather, only factual disputes that are *material* can preclude entry of summary judgment.  *Radobenko v. Automated Equip. Corp.*, 520 F.2d 543-44 (9th Cir. 1975).   A fact is material if it is essential to the proper disposition of the claim.  *Id.* at 540.  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *White*, 497 F. Supp. 2d at 1082.  If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, summary judgment **must** be granted.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### B. PLAINTIFF'S FIRST, SECOND, AND EIGHTH CAUSES OF ACTION FOR UNPAID WAGES FAIL AS A MATTER OF LAW

#### 1. Plaintiff's Unpaid Minimum Wage And Overtime Causes Of Action Fail Under California Law And The FLSA Because The Bank Had No Knowledge Of Any Off-The-Clock Work Performed

Plaintiff's minimum and overtime wage claims are based on Plaintiff's purported off-the-clock work, specifically time she allegedly spent on pre-shift activities such as booting up her computer and logging into the Bank's systems and applications, which she also purportedly performed prior to clocking back in from lunch.  *See* 5AC ¶¶ 39, 40, 44, 57, 64, 110.

Under California law, an employer is entitled to rely on the time records submitted by its employees to determine the number of hours worked, unless the employer knows (*i.e.*, has direct knowledge) or should have known (*i.e.*, has constructive knowledge) that the time records are inaccurate.  *See Porch v. Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1074–75 (C.D. Cal. 2008) (Wilson, J.), *aff'd*, 364 F. App'x 365 (9th Cir. 2010).  In *Porch,* the plaintiff asserted claims for unpaid wages, including for work during meal breaks.  *Id.* at 1062.  The plaintiff admitted that he was required by the employer to record all of his time worked, that

he mostly did so, that he never reported he was working off-the-clock and that his supervisor never told him to work off-the-clock. *Id.* at 1067. Despite these admissions, the plaintiff still alleged that the defendant had constructive knowledge of off-the-clock work being performed. *Id.* The court disagreed and granted summary judgment for the employer. *Id.* at 1067, 1077.

Indeed, if a plaintiff's time records do not show that work is being performed (including during meal breaks), there is a presumption that no off-the-clock work was performed. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1051 (2012) (stating "that employees are clocked out creates a presumption they are doing no work"). In order to rebut that presumption, the plaintiff must present evidence that, despite time records to the contrary, the defendant knew or should have known of the alleged violations. *Id.*; *see also Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 938, 943-45 (N.D. Cal. 2016) (granting the defendant's motion for summary judgment as to the plaintiff's off-the-clock claim because the plaintiff submitted insufficient evidence to create a triable issue of the employer's actual or constructive knowledge).

The foregoing legal principles are equally applicable under both the FLSA and California law. For example, in *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 475 F. Supp. 630 (D. Or. 1979)*, an employee filed a claim under the FLSA for off-the-clock work. The evidence showed that the defendant required the plaintiff to report all hours worked and, in turn, the employer relied on timesheets submitted by the plaintiff to pay him. *Id.* at 631-32. Although the plaintiff's timesheets did not reflect he worked off-the-clock, the plaintiff testified that he "visited with [his store manager] during periods of alleged off-the-clock work," which allegedly showed that the defendant knew or should have known about the off-the-clock work was performed. *Id.* at 631. The court noted that "only if [the store manager] had retrieved [the plaintiff's] weekly time sheets would the store manager have discovered that [the plaintiff]" was sometimes working off-the-clock. *Id.* However,

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT**

because the plaintiff presented no evidence that the employer had any 'duty so to inquire," the court held that the plaintiff's testimony, even if true, did not create a triable issue that the defendant had actual or constructive knowledge that off-the-clock work was performed and, as a result, the court granted the defendant's motion for summary judgment. *Id.* at 631, 634. The court found that the plaintiff in that case, as Plaintiff in this case, "prevented the [employer] from complying with the [FLSA] by failing to report his overtime hours accurately." *Id.* at 634.

Importantly, in order to create a triable issue of whether the defendant had constructive knowledge of a plaintiff working off-the-clock, the plaintiff **cannot** merely rely on evidence that the defendant "**could** have known" of the plaintiff's alleged off-the-clock work, but must present evidence that the defendant "**should** have known." *See Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal. App. 4th 391, 399 (2014) (emphasis added). If the defendant instructs the plaintiff to report all hours worked and pays the plaintiff in accordance with time records submitted by the plaintiff, all of which the Bank did in this case, the mere existence of alternative records or data reflecting alleged off-the-clock work does **not** create a triable issue of an employer's constructive knowledge. *Id.* at 398-99.

In particular, in *Jong*, the plaintiff alleged that, notwithstanding what he recorded on his timesheets, his employer had constructive knowledge of alleged off-the-clock work based on evidence of alarm-code data showing that he often deactivated his store's alarm system prior to clocking in and reactivated the system after clocking out, and that he was performing work when the alarm system was deactivated. *Id.* The court found that such evidence did not create a triable issue of constructive knowledge on the part of the employer because "that information **was not before [the defendant] when paying [the plaintiff]** and [the defendant] could reasonably believe that he did not begin or end work except as he reported." *Id.* (emphasis added).

Similarly, in *Cleveland*, *supra*, the plaintiff brought a claim for off-the-clock

work under the California Labor Code.  Although the evidence showed the defendant required the plaintiff to record all hours worked, the plaintiff argued that the defendant had constructive knowledge of his off-the-clock work because his supervisors saw him working outside his scheduled hours.  *Cleveland*, 200 F. Supp. 3d at 932, 939.  In rejecting the plaintiff's argument, and granting the defendant's motion for summary judgment, the court held that merely because a supervisor allegedly saw the plaintiff working prior to his scheduled start time, without further evidence showing that the supervisor actually "knew [the plaintiff's] shift schedule offhand" and "knew [the plaintiff] had not already clocked in," the plaintiff's allegations were "meaningless" and did not create a triable issue of actual or constructive knowledge of the alleged off-the-clock work.  *Id.* at 943, 945.

Here, as in *Porch*, the Bank maintained compliant timekeeping policies that required Plaintiff to accurately record all of her time worked to the minute, including any time spent on any preliminary and end of shift tasks.  The Bank's training, which Plaintiff admits she took and understood, reinforced its policy that her time records should include all time worked, including preparatory tasks and equipment preparation such as logging in and out of her computer and setting up the Bank's systems and applications.  Plaintiff admits that she was never told not to comply with this policy.  Rather, on her own, she allegedly chose not to accurately record all of her work time, which she knew violated the Bank's written policy.  She even failed to go back and change her time entries despite admitting that the Bank always granted her requests to modify other entries.

Despite her failure to comply with the Bank's policies in accurately recording her time, Plaintiff alleges that the Bank still had knowledge of the off-the-clock work she performed based on its "ability to track the amount of time that [she] . . . spent in connection with [her] pre-shift activities."  5AC ¶ 41.  Yet, there is ***no evidence*** that the Bank was aware of any off-the-clock work that Plaintiff allegedly performed.  Plaintiff never complained of any uncompensated off-the-clock work and, as

confirmed by Plaintiff's supervisor, the Bank had neither actual nor constructive knowledge of such work, which allegedly was done in direct contravention of its timekeeping policies.[4]   As such, the Bank was entitled to rely on the time entries Plaintiff submitted to determine the number of hours she worked and to pay her according to those entries.[5]   In addition, *Jong* holds that, if an employer instructs an employee to report all hours worked and pays the employee in accordance with his or her submitted time records, as the Bank did here, the mere existence of other records or data which might reflect alleged off-the-clock work ***fails to create a triable issue*** of an employer's constructive knowledge.  *See Jong*, 226 Cal. App. 4th at 398-99.

Accordingly, because Plaintiff cannot meet her burden of proof under California law or the FLSA that she worked off-the-clock, Defendant is entitled to summary judgment on the First, Second, and Eighth Causes of Action.

### 2.   Plaintiff's Overtime Causes Of Action Fail Under California Law And The FLSA Because Any Alleged Underpayments Were Completely Setoff By PTO Overpayments To Her

In connection with the Second and Eighth Causes of Action, Plaintiff also contends that she was underpaid overtime pay, although she has never disclosed by how much, based on the CVL bonuses she received.  Even assuming *arguendo* that the Bank allegedly miscalculated such overtime payments, her claims fail because it

---

[4] As in *Forrester*, Plaintiff has no evidence that the Bank had any "duty so to inquire."  Even if the Bank could "track" her activities, such allegation does not create a triable issue that the Bank had actual or constructive knowledge that off-the-clock work was performed given that Plaintiff has no evidence that any such tracking data was used for payroll purposes.  *See Forrester*, 475 F. Supp. at 631, 634.

[5] *See, e.g.*, *Porteous v. Capital One Servs. II, LLC*, 2018 WL 3469016, at *8 (D. Nev. July 17, 2018) (dismissing claim after finding that plaintiff did not make any complaints under defendant's timekeeping policies prohibiting uncompensated pre- or post-shift activities, defendant did not know and had no way of knowing plaintiff was working off-the-clock, and defendant had no opportunity to cure or address plaintiff's concerns prior to suit being filed).

14

is beyond dispute that the Bank's overpayment of PTO wages to her ***exceeds*** the amount of any and all allegedly underpaid overtime wages.

"Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filling the answer be barred by the statute of limitations." Cal. Civ. Proc. Code § 431.70 ("Section 431.70"). As the California Supreme Court has stated, such offset "eliminates a superfluous exchange of money between the parties." *Jess v. Herrmann*, 26 Cal. 3d 131, 137 (1979).

Section 431.70 applies to claims asserted in California state courts, as well as those in cases which are removed to federal court on the basis of diversity jurisdiction. *See Enodis Corp. v. Employers Ins. Co. of Wausau*, 2004 WL 5642006, at *1 (C.D. Cal. May 18, 2004) (Snyder, J.); *see also Gonsalves v. Conseco Ins. Co.*, 2006 WL 3486962, at *6 (E.D. Cal. Dec. 1, 2006) (applying Section 431.70 to state-law contract claims).

Under Section 431.70, if the value of the defendant's offset equals or exceeds the value of the plaintiff's claim, the court should **dismiss** the plaintiff's claim. *See Safine v. Sinnott*, 15 Cal. App. 4th 614 (1993). In *Safine,* the plaintiff filed a claim for unpaid legal fees. *Id.* at 614. The defendant asserted an offset affirmative defense based on a claim of legal malpractice against the plaintiff. *Id.* The court found that the plaintiff committed malpractice, and that the value of the plaintiff's liability to the defendant *exceeded* the value of the plaintiff's own claim. *Id.* at 618-19. Applying the offset affirmative defense under Section 431.70 as raised by the defendant, the court held that the plaintiff must "take nothing by his complaint." *Id.* at 619; *see also Constr. Protective Servs. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189,

198 (2002) (explicitly stating that a defendant "may . . . assert the setoff defensively to defeat the plaintiff's claim in **whole or in part**" [emph. added]).

Setoff affirmative defenses are readily applicable in wage and hour cases.  In *Patterson v. Henderson Tire & Rubber Co.*, 112 Cal. App. 48 (1931), a former employee of the defendant brought a claim for **unpaid wages**.  *Id.* at 49.  The defendant asserted an offset affirmative defense on the basis that the plaintiff owed the defendant money for merchandise he had purchased from the defendant prior to his employment.  *Id.*  The court held that the amount owed by the plaintiff to the defendant constituted an offset against the plaintiff's claim for unpaid wages.  *Id.* at 49-50.  Similarly, in *McDaniel v. City & Cty. of San Francisco*, 259 Cal. App. 2d 356 (1968), the plaintiff filed a claim for **back-pay** against the defendant.  *Id.* at 358.  The defendant asserted an offset affirmative defense on the basis that the plaintiff had underpaid his contribution for his pension fund.  *Id.* at 360.  The court held that the plaintiff's under-contribution to his pension fund constituted an offset against his claim for back pay.  *Id.* at 364-65; *see also Kalinowski v. Bd. of Educ.*, 90 Cal. App. 3d 245 (1979) (holding that defendant's overpayment of disability benefits to the plaintiff constituted an offset against her claim for back pay).

As set forth in the Drozynski Declaration, for purposes of this Motion, the Bank recalculated the overtime payments Plaintiff claims she should have received based on the bonuses she earned using Plaintiff's proffered calculation methodology (*i.e.*, for purposes of this Motion only, the Bank has assumed – without conceding – that the decision in *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 549, (2018), *as modified* (Apr. 25, 2018), applies).  As noted above, that recalculation results in Plaintiff being owed – at most – an additional $662.22 in overtime wages.  However, the Bank ***overpaid*** Plaintiff $914.79 in PTO in connection with her termination.  As such, the Bank is owed *more* in overpaid PTO than the most Plaintiff could possibly be owed in unpaid overtime.

Therefore, Plaintiff's CVL bonus-related overtime claims  are barred as a

16

matter of law.   Indeed, under Section 431.70, where there are cross-demands for money at any point in time, as there are here, because the value of the Bank's offset *exceeds* the value of Plaintiff's claim, this Court should dismiss Plaintiff's overtime claims.  *See Safine*, 15 Cal. App. 4th at 619.

For a separate but related reason, the overtime claims are therefore defective due to lack of standing.  The redressability prong of Article III standing "focuses, as it should, on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation . . . ."  *Sprint Commc'ns Corp. v. APCC Servs., Inc.* ("*Sprint*"), 554 U.S. 269, 287 (2008).  If a plaintiff can obtain monetary damages to compensate her for the injury that she has allegedly suffered, she satisfies the redressability requirement.   Here, Plaintiff <u>cannot</u> establish any redressability for her purported overtime claims because the Bank has ***already paid*** her ***more*** than the amount of overtime wages she arguably could recover.  Thus*, she has no redressable claims for overtime wages, and she lacks standing to pursue such claims.

In sum, Plaintiff's claims that Defendant failed to pay her all of her earned minimum and overtime wages in violation of the California Labor Code and the FLSA fail as a matter of law, and judgment should be granted in Defendant's favor on her First, Second, and Eighth Causes of Action.

### C.   PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION FOR MEAL AND REST BREAK VIOLATIONS FAIL AS A MATTER OF LAW

#### 1.   Plaintiff's Meal Break Cause Of Action Fails

In all *six* of the complaints Plaintiff has filed in this action, her meal break claim has been limited to alleged *second* meal break violations.  As such, she cannot assert an unpled claim for *first* meal break violations to avoid summary judgment.[6] However, even if she could do so, as discussed below, her claim fails.

---

[6] Here, Plaintiff cannot avoid summary judgment by asserting a claim or theory not alleged in the operative pleading.  *See, e.g.*, *Schultz v. Wal-Mart Stores*,

To properly prove a meal break violation claim, a plaintiff must establish that the employer:  (1) did not relieve the employee of all duty; (2) did not relinquish all control over the employee's activities and permit them a reasonable opportunity to take a compliant meal break; and (3) impeded or discouraged employees from taking these meal breaks.  *Brinker*, 53 Cal. 4th 1004, 1040 (2012).  An employee "must show that he was ***forced to forego*** his meal breaks as opposed to merely showing that he did not take them regardless of the reason."  *White*, 497 F. Supp. 2d at 1089 (emph. in orig.).  But, "an employer is not obligated to 'police meal breaks' and ensure no work is performed by those taking them."  *Brinker*, 53 Cal.4th at 1040.[7]

In *Manigo v. Time Warner Cable, Inc.*, 2017 WL 5054368, at *4 (C.D. Cal. Oct. 17, 2017) (Walter, J.), the plaintiffs alleged that they were regularly required to take their meal breaks late and had to skip their second meal breaks entirely due to short staffing and their employers' requirements that dispatchers answer all incoming calls.  *Id.*  The defendants had maintained policies to schedule lunch breaks for all dispatchers working more than eight hours within the first five hours of the shift.  *Id.*

---

*Inc.*, 68 F. App'x 130, 132 (9th Cir. 2003) (affirming the district court's grant of summary judgment where the plaintiff had not amended her complaint before the time specified in the scheduling order had expired and the district court was properly "unwilling to . . . exercise its discretion . . . in order to salvage a claim that was deliberately not pursued.").  This is particularly true where, as here, the deadline to amend the 5AC under the Court's Scheduling Order has run.  *See Corona v. Time Warner Cable, Inc.*, 2014 WL 11456535, at *6 (C.D. Cal. Oct. 16, 2014) (Gutierrez, J.) ("Plaintiff has not demonstrated 'good cause' to modify the scheduling order to allow amendment of his pleadings and expansion of the scope of the summary judgment motion because Plaintiff did not diligently alert the Court of his need for these changes when he decided to pursue a new theory of liability during discovery.").

[7] Further, evidence that an employer knew that an employee worked during breaks does not, standing alone, establish liability. *Brinker*, 53 Cal. 4th at 1040. "[E]mployees cannot manipulate the flexibility granted them by employers to use their breaks as they see fit to generate such liability."  *Id.*

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

The plaintiffs relied heavily on time records that reflected that they did not take meal breaks within the first five hours of work on certain days to support their claim that the defendants failed to relieve them of work duties.  *Id.*   Nevertheless, the court concluded that, "the records, alone, are insufficient to create a material factual dispute on this issue, as there is no indication as to why the breaks were taken late." *Id*.  Further, the court reasoned, "although [p]laintiffs provide vague and conclusory testimony that they were generally forced to take meal breaks later than scheduled because of work flow issues, they have failed to identify a single specific instance in which they lacked the opportunity to take a scheduled break."  *Id.* at *4.  Thus, the court held that the plaintiffs failed to create a triable issue of material fact as to whether the defendants committed meal break violations.  *Id.* at *5.

Throughout Plaintiff's employment, the Bank maintained written policies that properly provide for the requisite duty-free, 30-minute meal breaks to be taken if the employee works more than 5 hours in a workday, and for a second meal break if the employee works more than 10 hours in a workday.  Plaintiff testified that she understood these policies, received training to accurately record her meal breaks, and was never instructed to skip, impede, or delay her meal breaks.  Her supervisor expected and understood that Plaintiff was properly taking her breaks pursuant to the Bank's policies.  Plaintiff never made him aware that she was not being properly provided meal breaks.

Furthermore, Plaintiff was required to accurately record her meal breaks, which she now claims were not always accurate.  But, she is unable to identify a *single day* that she was not provided a proper meal break and admits that she never notified anyone at the Bank that any meal break violation ever occurred.

Therefore, none of Plaintiff's allegations, even if proven to be true, demonstrate that the Bank *forced* her to *forego* her meal breaks.  *See, e.g.*, *Plaisted v. Dress Barn, Inc.*, 2013 WL 300913, at *4 (C.D. Cal. Jan. 25, 2013) (Wright, J.).  As

1  such, summary judgment should be granted in favor of Defendant on Plaintiff's
2  Third Cause of Action for meal break violations.

3            **2.      Plaintiff's Rest Break Cause Of Action Fails**

4            Under California IWC Wage Order No. 4, employers are required to
5  "authorize and permit" a 10-minute rest period for every four hours of work.  8 Cal.
6  Code Regs. § 11070, Subdiv. 12.  Rest breaks are governed by the same "reasonable
7  opportunity" standard as meal breaks, except that employers have more flexibility as
8  to the timing of the breaks.  *Manigo*, 2017 WL 5054368, at *5 (quoting *Brinker*, 53
9  Cal. 4th at 1031.).  "Employers [have] a duty to make a good faith effort to authorize
10 and permit rest breaks in the middle of each work period, but may deviate from that
11 preferred course where practical considerations render it infeasible."  *Brinker*, 53
12 Cal. 4th at 1031.

13          In *Porch*, *supra*, the plaintiff admitted "he was never told to work through any
14 of his rest breaks," "that he never complained to anyone that he worked breaks," and
15 "stated that he did take breaks of five or ten minutes on occasion."  685 F. Supp. 2d
16 at 1074–75.  Accordingly, the court held that, based on the evidence before it, "rest
17 breaks were provided and that [p]laintiff did take those rest breaks."  *Id.*

18          Similarly here, the Bank authorized and permitted 15-minute rest periods for
19 every four hours worked or major fraction thereof.  Plaintiff's supervisor expected
20 her to take her breaks accordingly, believed she was doing so, and had no knowledge
21 that Plaintiff was not properly taking her breaks.  Plaintiff admits that she was never
22 told to work through any of her rest breaks by any manager or supervisor and that
23 she never complained to anyone that she worked through rest breaks.   To the
24 contrary, she admitted that it was *rare* that she did not take a break.  Even if she
25 *chose* to forego certain breaks, there is no evidence that the Bank prevented Plaintiff
26 from taking a rest break or had any knowledge that she was allegedly prevented from
27 taking a break.

28

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Accordingly, as in *Porch*, summary judgment should be granted in Defendant's favor on the rest break claim because Plaintiff was authorized and permitted to take compliant rest breaks and Defendant was never made aware that she was prevented from taking them.  *See also Manigo*, 2017 WL 5054368, at *5 (granting summary judgment for defendant on the rest break claim finding that "the evidence demonstrates [p]laintiffs frequently made subjective personal decisions about when to take breaks based on their perceptions of coverage rather than their schedules despite the fact that they had never had responsibility for determining coverage needs").

### D. PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION FOR FAILURE TO PAY ALL TIMELY WAGES, FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS, AND UCL VIOLATIONS FAIL AS A MATTER OF LAW

#### 1. The Waiting Time Penalties Cause Of Action Cannot Be Maintained As A Matter Of Law

*First*, Plaintiff's derivative claim for waiting time penalties fails because it is predicated on her claims for failure to pay minimum and overtime wages and for meal and rest break violations, which, as discussed above, fail as a matter of law. *See Serrano v. Aerotek, Inc.*, 21 Cal. App. 5th 773, 785 (2018) (derivative claim for waiting time penalties based on failed meal period claim likewise fails); *see also White*, 497 F. Supp. 2d at 1089-90 (granting summary judgment on inaccurate wage statement and UCL claims that were derivative of the plaintiff's off-the-clock and break claims).  Because these claims fail as a matter of law, as discussed above, so does Plaintiff's claim for waiting time penalties.

*Second*, as confirmed by the recent California Court of Appeal decision in *Naranjo v. Spectrum Sec. Servs., Inc.*, 2019 WL 4686516, at *16 (Cal. Ct. App. Sept. 26, 2019), claims for alleged meal and rest break violations do not give rise to a claim for waiting time penalties under Cal. Labor Code § 203.  Accordingly, Plaintiff's Fifth Cause of Action for waiting time penalties fails as a matter of law.

## 2. Plaintiff's Wage Statement Cause Of Action Cannot Be Maintained As A Matter Of Law

Plaintiff's claim for failure to provide accurate wage statements fails because it too is derivative of her failed claims for minimum and overtime wages and meal and rest break violations. Further, meal and rest break violations do not give rise to liability under Cal. Labor Code § 226. *See Naranjo*, 2019 WL 4686516, at *16.

Additionally, Plaintiff is not entitled to any damages or statutory penalties under Cal. Lab. Code § 226(e) ("Section 226(e)") because she cannot establish the required element that she "***suffer[ed] injury as a result*** of" a knowing and intentional failure to comply with the wage statement requirements of Cal. Lab. Code § 226(a) ("Section 226(a)"). *See* Cal. Lab. Code § 226(e)(1) (emph. added). To establish this element, Plaintiff must demonstrate that she has suffered a "cognizable injury" amounting to *something more than not receiving a compliant itemized wage statement*. *See Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *10 (N.D. Cal. Feb. 19, 2013) (holding that "[a] plaintiff must adequately plead an injury arising from an employer's failure to provide full and accurate wage statements, and the omission of the required information alone is not sufficient"). An employee is deemed to suffer an injury when there is an inaccuracy in any of the required information under Section 226(a) *and* the employee cannot "promptly and easily determine from the wage statement alone . . . the amount of the gross wages ***paid*** to the employee ***during the pay period***." Cal. Labor Code § 226(e)(2)(B) (emph. added). Plaintiff has no evidence that this information could not be discerned from her wage statements issued by the Bank.

Finally, under California law, there is no basis for a plaintiff to maintain a claim under Section 226 based simply on a claim that the plaintiff is <u>allegedly</u> owed <u>additional</u> wages. In *Maldonado v. Epsilon Plastics, Inc.,* 22 Cal. App. 5th 1308, 1336 (2018), the court reversed a trial court award of wage statement penalties where the wage statements *accurately reflected* the wages *actually paid* to the

employee.  In doing so, the court reasoned that the implementation of an unlawful alternative workweek schedule resulting in an underpayment of wages "does not mandate that [employees] also receive penalties for the wage statements which accurately reflected their compensation under the rates at which they had worked at the time." *Id.* at 1337.  The court held that "it is illogical to think" the Legislature intended to create wage statement penalties in this circumstance; "plaintiffs' counterargument boils down to the proposition that any failure to pay overtime at the appropriate rate also generates a wage statement injury justifying the imposition of wage statement penalties—an apparent unintentional double recovery." *Id.* at 1136.

Here, as in *Maldonado*, Plaintiff's Section 226 claim is premised on the theory that her wage statements were inaccurate because they failed to report <u>additional</u> wages she believes she should have been paid.  Such a liability theory fails because Plaintiff does not allege – and nor can she prove – that her wage statements were inaccurate as to the wages she was ***actually paid.***

### 3.    Plaintiff's UCL Cause Of Action Fails

Plaintiff's UCL claim is predicated wholly on Defendant's alleged failure to properly calculate and pay all minimum and overtime wages under California law and the FLSA and provide compliant meal and rest breaks.  However, because Plaintiff's predicate claims fail as a matter of law for the reasons discussed above, Plaintiff's wholly derivative UCL claim also fails as a matter of law.  *See, e.g.*, *Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003); *Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal. 4th 217, 244 (2007). Therefore, summary judgment should be granted as to the Seventh Cause of Action.

///

///

///

///

///

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that summary judgment, or in the alternative partial summary judgment, be granted in its favor.

DATED: October 7, 2019          **MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**


By: */s/ Matthew C. Kane*
Matthew C. Kane
Michael D. Mandel
Sylvia J. Kim
Attorneys for Defendant
BANK OF AMERICA, N.A.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 7, 2019 at Los Angeles, California.


*/s/ Matthew C. Kane*
MATTHEW C. KANE

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**